UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WILLIAM H. HOWISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MILO ENTERPRISES, INC., | ) | 2:11-mc-204-JAW |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FREAKY BEAN COFFEE COMPANY, | ) | |
| | ) | |
| Debtor. | ) | |

**ORDER ON MOTION TO WITHDRAW REFERENCE**

Concluding that the motion is untimely, the Court denies a motion to withdraw its reference to the Bankruptcy Court.

**I.    STATEMENT OF FACTS[1]**

On February 25, 2009, an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, was filed against The

---

[1]    In its motion, Milo Enterprises, Inc. (Milo) submitted a twelve paragraph statement of procedural and factual background. *Mot. to Withdraw Reference* ¶¶ 1-12 (Docket # 1) (*Def.'s Mot.*). In its response, William H. Howison (Trustee) as Trustee admitted each of these paragraphs; the only exception was paragraph 11, which described the United States Supreme Court decision of *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *Pl.'s Opp'n to Def.'s Mot. to Withdraw the Reference* (Docket # 3) (*Pl.'s Opp'n*). The Trustee admitted that the Supreme Court issued *Stern* but denied Milo's legal conclusions in paragraph 11. In describing the factual background, the Court has recited Milo's admitted facts.

In its opposition, the Trustee posited five additional facts. *Pl.'s Opp'n* at 2-3 (Docket # 3) (*Pl.'s Opp'n*). Milo did not directly address whether it objected to the Trustee's additional facts. *Def.'s Reply to Opp'n to Mot. to Withdraw Reference* at 1-8 (Docket # 6) (*Def.'s Reply*). As Milo has not objected to the Trustee's assertions, the Court has considered them.

Freaky Bean Coffee Company (Debtor). The Bankruptcy Court subsequently appointed William H. Howison (Trustee) as Chapter 7 Trustee for the Debtor's estate. Milo never filed a proof of claim against the Debtor and makes no claim against the Debtor's estate.

On March 22, 2010, the Trustee filed a Complaint against Milo, initiating an adversary proceeding. In the Complaint, the Trustee asserted four causes of action against Milo: (1) Count One: avoidance of allegedly preferential transfers from the Debtor to Milo pursuant to 11 U.S.C. § 547; (2) Count Two: recovery of property pursuant to 11 U.S.C. § 550 if the Trustee prevails on Count One; (3) Count Three: disallowance of claim or claims asserted by Milo against the estate pursuant to 11 U.S.C. § 502(d) until such time as any avoidance payments to Milo by the estate are satisfied; and (4) Court Four: as an alternative, avoidance of allegedly fraudulent transfers to Milo from a third party, MRC Holdings (MRC), a party claimed to owe money to the Debtor, pursuant to the Maine Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S. § 3571, *et seq.*

In its Complaint, the Trustee asserted that the adversary proceeding was "a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), and/or (O) for which [the Bankruptcy Court] is authorized to hear and determine all matters regarding this bankruptcy case." In its Answer, Milo stated that "[p]aragraph 5 of the Complaint sets forth a legal conclusion to which no response is required." Neither party requested a jury trial. In a Joint Pretrial Statement/Pretrial Order (Joint Pretrial Order), which was drafted and submitted by counsel for both the

2

Trustee and Milo, the parties stipulated and the Bankruptcy Court stated, "This is a core matter in its entirety, on which the bankruptcy court will enter final judgment."

Following the filing of the Complaint, the parties conducted discovery and filed cross-motions for summary judgment. On January 14, 2011, Milo moved for summary judgment and included a 114 paragraph statement of material fact and 42 attached exhibits. The motion for summary judgment was fully briefed before the Bankruptcy Court. As a result of extensive briefing and a hearing, the Bankruptcy Court obtained a comprehensive understanding of the factual and legal issues in this case and on June 9, 2011, the Bankruptcy Court denied the cross-motions for summary judgment. On June 23, 2011, the United States Supreme Court issued *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011). On August 30, 2011, the parties held a final pretrial conference in the Bankruptcy Court and at the conference, counsel for Milo raised the issue of the Bankruptcy Court's constitutional authority to enter final orders in the adversary proceeding given the recent *Stern* decision. On September 7, 2011, the parties filed a Trial Stipulation with the Bankruptcy Court, containing 80 factual stipulations and 22 exhibits, the admissibility of which was stipulated. The Bankruptcy Court set September 14, 2011 as the deadline to submit briefs regarding this issue.

Milo filed its motion with this Court on September 15, 2011; the Trustee responded on October 6, 2011; Milo replied on October 27, 2011. *Def.'s Mot.*; *Pl.'s Opp'n*; *Def.'s Reply*.

## II.     THE PARTIES' POSITIONS

### A.     Milo's Motion

Noting that section 157(d) allows the district court to order a proceeding withdrawn from a bankruptcy court "for cause shown," Milo moves for permissive, not mandatory withdrawal.  *Def.'s Mot.* at 3-4, 4 n.1.  Milo says that district courts have generally applied six criteria to determine whether to withdraw a reference: (1) judicial economy; (2) uniformity of bankruptcy administration; (3) reduction of forum shopping and confusion; (4) conservation of debtor and creditor resources; (5) expedition of the bankruptcy process; and (6) whether a jury trial has been requested.  *Id.* at 4 (citing *Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*, 280 B.R. 779, 782 (D. Me. 2002)).  Milo contends that the lack of constitutional authority of the Bankruptcy Court to proceed would constitute additional "cause" for withdrawal of the reference.  *Id.* at 5.  Milo points out that under *Stern* a key question is whether the issues in the Bankruptcy Court proceeding were "core" or "non-core" under § 157(b) and that *Stern* changes the inquiry because some "core" matters—including, Milo says, this one—cannot be constitutionally adjudicated by the Bankruptcy Court.  *Id.*

Milo argues that *Stern* declared unconstitutional the Bankruptcy Court's exercise of judicial power in certain core proceedings.  *Id.*  Because of the doctrine of separation of powers, the *Stern* Court—according to Milo—concluded that Bankruptcy Judges, who do not have life tenure and salary protections, lack essential independence from the legislative and executive branches.  *Id.*  For some

4

controversies, Milo notes, when the purpose of the tribunal is to resolve certain "public rights," Congress is empowered to establish adjudicative bodies. *Id.* at 6.

According to Milo, the *Stern* Court made it clear that to survive constitutional scrutiny, Bankruptcy Court jurisdiction must involve a public right. *Id.* Milo asserts that the "scope of what Bankruptcy Court[s] may permissibly adjudicate has not been definitively established." *Id.* at 7. Milo maintains that "*Stern* held that Bankruptcy Courts lack the constitutional power to render final decisions in disputes that do not fall under the public rights umbrella." *Id.* at 9.

Milo stresses that it is not requesting that this Court "examine whether the bankruptcy regime as a whole (*i.e.*, restructuring of debtor/creditor relationships) constitutes a public right." *Id.* Instead, Milo questions whether "the surviving causes of action asserted by the Trustee in the Complaint—Count I alleging preferential transfers under 11 U.S.C. § 547(b), Count II seeking to recover any avoided transfers pursuant to 11 U.S.C. § 550 and Count IV alleging the existence of state court fraudulent transfers—fall within the public rights exception and therefore can be the subject of final orders issued by the Bankruptcy Court."[2] *Id.* at 9-10. Milo submits that because it has not filed a proof of claim against the Debtor's estate, the answer "when viewed through the lens of *Stern* and its predecessors, is clearly no." *Id.* at 10.

According to Milo, "*Stern*, *Granfinanciera* [*S.A. v. Nordberg*, 492 U.S. 33 (1989)], and their progeny make it clear that because of Milo's decision to not file a

---

[2]      Milo claims that Count III, which requests that Milo's claims be disallowed, is moot because it never filed any claims. *Def.'s Mot.* at 2, 9 n.6; *Def.'s Mot.* Attach. 1, *Compl.* Count III.

proof of claim in the Debtor's estate, the Bankruptcy court ***cannot*** enter a final order on Count IV of the Complaint." *Id.* at 10 (emphasis in original). Milo quotes *Stern* as stating that a state common law cause of action—"like the fraudulent conveyance claim at issue in *Granfinanciera*"—is "between two private parties" and "Congress has nothing to do with it." *Id.* at 11 (quoting *Stern*, 131 S. Ct. at 2614). Because the fraudulent transfer claim "do[es] not fall within the public rights exception and because Milo has not filed a proof of claim," Milo concludes that the Bankruptcy Court "is not empowered to issue a final order on Count IV." *Id.* at 11-12.

Milo also contends that the Trustee's preference claim "does not (in the absence of a proof of claim) fall within the public rights exception." *Id.* at 12. Milo says that preference actions, although now codified in the Bankruptcy Code, predate the Code and were common law causes of action "that were historically brought in England and have been brought in courts in this Country." *Id.* at 13. Milo views the statutory preference action as a congressional reclassification of a preexisting, common law cause of action. *Id.*

Milo urges that the result in Count I dictates the same result in Count III, the Trustee's request for avoidance of the preferential transfer. *Id.* at 14. Milo says that "if the Bankruptcy Court lacks the authority to enter a final order on the threshold question of whether a challenged payment was preferential, it also cannot, if it answers in the affirmative, then take the next step of entering a final order compelling Milo to turn over the value of the same." *Id.*

6

Finally, turning to relief, Milo proposes that "the constitutional inability of the Bankruptcy Court to render final orders or judgments in the Adversary Proceeding . . . provides ample cause to withdraw the reference to District Court." *Id.* at 15. It submits that the District Court should "conduct a bench trial itself." *Id.* Otherwise, it maintains, the Bankruptcy Court would be required to conduct a trial and issue proposed findings for District Court *de novo* review, which would be inefficient. *Id.* at 15-16. Milo contends that the factors under 28 U.S.C. § 157(d) have been satisfied. *Id.*

### B.    The Trustee's Opposition

The Trustee first argues that on May 13, 2011, Milo has expressly waived the issue it is currently raising. The Trustee notes that Milo and the Trustee signed and filed a Joint Pretrial Statement, which the Bankruptcy Court reduced to Pretrial Order, and Milo thereby consented to the Bankruptcy Court's exercise of authority in this case. *Pl.'s Opp'n* at 4-5. The Trustee contends that in *Stern*, the Supreme Court "made clear that such consents are to be enforced." *Id.* at 5. He quotes *Stern* as stating that because the party had consented to the Bankruptcy Court's resolution of his defamation claim, he had "forfeited any argument to the contrary." *Id.* (quoting *Stern*, 131 S. Ct. at 2608).

Next, the Trustee maintains that Milo's motion is untimely. *Id.* at 5-6. The Trustee notes that the Complaint in this case was filed on March 22, 2010 and that the parties have engaged in extensive discovery and motion practice before the Bankruptcy Court. *Id.* at 5. Conceding there is no "hard and fast rule as to what is

required for a withdrawal motion to be 'timely,'" the Trustee argues that it means "at the first reasonable opportunity." *Id.* (quoting *Laine v. Gross*, 128 B.R. 588, 588 (D. Me. 1991)). Observing that Milo failed to raise the issue of withdrawal until the final pretrial conference, the Trustee says its motion "cannot be deemed to be timely." *Id.* at 6.

The Trustee turns to the standards for withdrawal under § 157(d). *Id.* It argues that because the parties stipulated that this is a "core matter in its entirety," this Court "does not need to wrestle with" the question of the Bankruptcy Court's constitutional authority in light of the stipulation. *Id.* Even if the stipulation is overlooked, however, the Trustee maintains that "the present case consists of a routine avoidance action brought by a chapter 7 trustee against a party who received preferential payments from the debtor prior to the bankruptcy filing." *Id.* Because such actions "are governed by specific application of section 547 of the bankruptcy code," the Trustee argues they "are actions controlled by the administrative scheme created by the bankruptcy code." *Id.* at 6-7. The Trustee also observes that *Stern* did not question the Bankruptcy Court's jurisdiction, only its authority to enter a final judgment, and the Trustee contends that the difference between the Bankruptcy Court's issuance of a final judgment and recommended decision subject to *de novo* review would be "marginal." *Id.* at 7-8.

Next, the Trustee argues that Milo's timing suggests that it "is in reality seeking to change courts." *Id.* at 8. The Trustee observes that the Bankruptcy Court has "consumed a substantial amount of time and resources" and that Milo

should not be allowed to forum shop "because the outcome of the summary judgment proceedings [was] not to its liking." *Id.* Similarly, the Trustee says that continued retention in the Bankruptcy Court will conserve debtor and creditor resources and will expedite the bankruptcy process. *Id.* at 8-9.

Lastly, the Trustee views fraudulent transfer and preference claims as quintessential core bankruptcy claims, which are by their very nature essential to the adjustment and restructuring of the debtor-creditor relations. *Id.* at 10. Given the expertise of the Bankruptcy Court in dealing with such issues, the Trustee urges this Court to allow these actions to continue to be resolved by the court best equipped to deal with them, and rejects Milo's argument that *Stern* suggests a different result. *Id.*

### C. Milo's Reply

Milo says that it did not waive the *Stern* issue because the Joint Pretrial Order was issued one month before the Supreme Court issued *Stern.* *Milo Reply* at 2. Regarding whether a state law counterclaim is a core proceeding, Milo says that *Stern* concluded that the Bankruptcy Court lacked the constitutional authority to enter a final judgment on a state law counterclaim "that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* (quoting *Stern*, 131 S. Ct. at 2620). Even if the Trustee attempts to recover allegedly preferential transfers may be characterized by § 157(b)(2)(F) as "core," they are, according to Milo, "not 'core' for purposes of determining the jurisdiction of the Bankruptcy Court inasmuch as there is no concomitant claim by Milo against the Freaky Bean estate." *Id.* at 2-3.

9

Milo maintains that it never gave a "*knowing* and voluntary" consent to the Bankruptcy Court's entering a final judgment in this case.  *Id.* at 3-4 (emphasis in original).  It emphasizes that "[a]s soon as Milo became aware that these proceedings were, in fact, non-core, it took immediate action to bring the issues to the Court['s] attention." *Id.* at 4.

Milo rejects the Trustee's untimeliness claim, noting that it first raised the *Stern* issue on August 30, 2011, about two months after *Stern* was issued.  *Id.* at 6. Milo insists it meets the "first reasonable opportunity" standard.  *Id.* at 7.

Milo also dismisses the Trustee's warnings about a flood of litigation in the District Court if this Court withdraws the reference.  *Id.* at 7.  It says that its argument would only apply in the "limited circumstances" where the defendant has not filed a proof of claim against the bankruptcy estate.  *Id.*

## III.  DISCUSSION

District courts have jurisdiction over bankruptcy actions under 28 U.S.C. § 1334(b).  Section 157(a) of Title 28 permits referral to the Bankruptcy Court, and by local rule, all cases and civil proceedings under Title 11 filed in Maine are automatically referred to the bankruptcy judges for the District of Maine.  *See* D. ME. LOC. R. 83.6(a).  The parties agree that this case presents a question of discretionary withdrawal under 28 U.S.C. § 157(d), which provides, in part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d).

The movant "bears the burden of demonstrating cause." *Turner v. Boyle*, 425 B.R. 20, 24 (D. Me. 2010); *see also Growe v. Bilodard, Inc.*, 325 B.R. 490, 492 (D. Me. 2005). Section 157(d) does not define "cause" and the First Circuit has not interpreted the term; nevertheless, "courts in this District balance a variety of factors, including judicial economy, whether withdrawal would promote uniformity of bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, expedition of the bankruptcy process, and whether a jury trial has been requested. *Turner*, 425 B.R. at 24 (internal punctuation omitted). These factors flow from the 1985 Fifth Circuit decision in *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).

The moving party also bears the burden of demonstrating the timeliness of its motion. *See United States v. Kaplan*, 146 B.R. 500, 503 (D. Mass. 1992). The standard for timeliness is whether the motion was filed "as promptly as possible in light of the developments in the bankruptcy proceeding," *id.*, or "at the first reasonable opportunity," *In re Giorgio*, 50 B.R. 327, 328 (D.R.I. 1985). "Timeliness is assessed from the time a complaint is filed or from the time the grounds for withdrawing the complaint first become apparent." *Kaplan*, 146 B.R. at 503. Also, timeliness must be "measured by the stage of the proceedings in the bankruptcy court." *Id.* at 504. In other words, "[a]s a bankruptcy proceeding becomes more developed, complicated, and involved, a court is more likely to find a motion untimely." *Id.* As this District has observed, timeliness may be even more essential in bankruptcy matters than in other types of cases because "time is money, and the

passage of time can have a detrimental impact on the bankruptcy court's ability to manage a successful outcome to the proceedings." *Growe v. Bangor Hydro-Electric Co. (In re Great Northern Paper, Inc.)*, 323 B.R. 7, 9 (D. Me. 2005).

The involuntary petition under Chapter 7 against the Debtor was filed on February 25, 2009 and the Trustee filed the Complaint against Milo on March 22, 2010. *Def.'s Mot.* at 1-2. The parties engaged in discovery and filed extensive cross-motions for summary judgment, which the Bankruptcy Court denied on June 9, 2011. *Id.* at 3. Milo did not raise withdrawal of the reference until August 30, 2011 and did not move for withdrawal until September 15, 2011. *Id.* Ordinarily, a motion to withdraw the reference filed eighteen months after a complaint and after cross-motions for summary judgment were filed and resolved would not be timely. *In re Great Northern Paper, Inc.*, 323 B.R. at 9-10 (petition for withdrawal denied as untimely where Trustee filed an adversary proceeding on November 3, 2004 and petition for withdrawal of reference was filed on January 21, 2005); *Laine*, 128 B.R. at 589 ("[t]he Court finds, therefore, that the motion for withdrawal of the reference, filed over six months after the alleged necessity for it became apparent, is untimely"); *In re Giorgio*, 50 B.R. at 328 (petition for withdrawal denied as untimely where Chapter 13 petition was filed in April 1983, an adversary proceeding was filed in January 1984, and petition to withdraw reference was filed in January 1985).

However, here, Milo argues that the time should run not from March 2010, but from June 23, 2011, when the Supreme Court decided *Stern*. Milo's point has

salience only to the extent the *Stern* Court declared new law that Milo should not have anticipated.  The Court concludes, however, that Milo should have raised the withdrawal issue before *Stern* was decided and that its petition for withdrawal is untimely.

In 1982, the Supreme Court highlighted the public rights doctrine and the constitutionality of the delegation of Article III powers to a non-Article III court. *See Northern Pipeline Construction Company v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982).  Section 157 of Title 28 represented the congressional response to *Marathon* and made the statutory distinction between core and non-core proceedings.  1-3 COLLIER ON BANKRUPTCY ¶ 3.02[1]-[3] (16th ed. 2012).  Moreover, the significance of the filing of a proof of claim as a proxy for consent to bankruptcy court jurisdiction, including a Trustee's counterclaim, has been an ongoing issue ever since the enactment of § 157(b)(2)(C).  *Id.* ¶ 3.02[3][d][i].

Furthermore, the Supreme Court addressed a fraudulent conveyance claim by a Trustee against a corporation that had not filed a proof of claim where "[t]he question presented [was] whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer".  *Granfinanciera*, 492 U.S. at 36.  The *Granfinanciera* Court held that "the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress' designation of fraudulent conveyance actions as 'core proceedings' in 28 U.S. C. § 157(b)(2)(H)."  *Id.*  Following *Granfinanciera*, the courts, including the First Circuit, the District Court in Maine,

and the Bankruptcy Court in Maine, have continually applied and refined *Granfinanciera*. *See, e.g., Braunstein v. McCabe*, 571 F.3d 108, 116-17 (1st Cir. 2009); *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 78 (1st Cir. 2008); *Growe v. Bilodard, Inc.*, 325 B.R. 490, 491 n.1 (D. Me. 2005); *Turner v. Bulduc (In re Crowe Rope Indus., LLC)*, 307 B.R. 1, 4 (Bankr. D. Me. 2004).

Nor was the *Stern v. Marshall* case exactly a secret. The dispute between the woman known to the public as Anna Nicole Smith and the son of her husband was not only generally notorious but also was the subject of a prior Supreme Court decision, *Marshall v. Marshall*, 547 U.S. 293 (2006). Moreover, once the Supreme Court granted the petition for the writ of certiorari on September 28, 2010, it was clear that the interstitial authority of the Article III and Bankruptcy Courts was returning to the Supreme Court. *See Stern v. Marshall*, 131 S. Ct. 63 (2010).

The Court does not expect clairvoyance from Milo. But it was not necessary for Milo to accurately predict the outcome in *Stern* in order to raise the reference issue promptly with the Bankruptcy Court. A court's authority to act on a case is a threshold issue, which ordinarily should be raised expeditiously. *See Laine*, 128 B.R. at 589. Furthermore, Milo did not merely maintain silence; as late as May 13, 2011, it affirmatively agreed—in the shadow of *Granfinanciera* and with *Stern* looming—that the proceeding was a core proceeding on which the Bankruptcy Court would enter final judgment.

If *Stern* represented a sea change in the law, Milo would have a better timeliness argument. Although the extent to which *Stern* carves new ground may

14

be debatable, the *Stern* majority stressed that it did not believe its decision "meaningfully change[s] the division of labor in the current statute" and concludes that its ruling "does not change all that much." *Stern*, 131 S. Ct. at 2620.   Milo itself describes *Stern* as "premised in large part on an earlier Supreme Court case, *Granfinanciera*," which—like this case—involved a fraudulent transfer action. *Def.'s Mot.* at 7.

Finally, if not deliberately strategic, Milo's failure to raise the reference question gave Milo a strategic advantage.   The timeliness requirement of § 157(d) not only encourages the parties to raise a withdrawal of reference question early in a proceeding, but it also discourages parties from getting a sneak peek at the Bankruptcy Court's view of critical issues.   Thus, the timeliness requirement is interwoven with the *Holland* factor counseling against forum shopping, discouraging a disappointed litigant from seeking withdrawal of the reference in the hope of securing a friendlier court.

The circumstances here seem especially egregious; on June 9, 2011, the Bankruptcy Court issued its order denying the cross-motions for summary judgment and Milo had the advantage of knowing the Bankruptcy Court's thinking on a number of critical issues.   Even so, Milo waited from June 23, 2011 until August 30, 2011 to seek withdrawal of the reference.   This delay of over nine weeks is unexplained and is sufficient, by itself, to render Milo's request untimely.   The courts in the District of Maine have taken seriously Judge Selya's "strict adherence" comment, *In re Giorgio*, 50 B.R. at 328, and have applied an unforgiving standard to

the timeliness requirement.  *See, e.g., In re Great Northern Paper, Inc.*, 323 B.R. at 10-11 (eleven-day delay deemed untimely).

The Court concludes that Milo did not act "as soon as practicable . . . so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay." *In re Giorgio*, 50 B.R. at 328-29.

## IV.    CONCLUSION

The Court DENIES Milo Enterprises, Inc.'s Motion to Withdraw Reference (Docket # 1).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of May, 2012